## J. A. GUILLOTTE *v.* CITY OF NEW ORLEANS.

Such portions of the Act No. 71 of 1852, entitled "An Act to consolidate the city of New Orleans and provide for the government and administration of its affairs," as are not contrary to the Act No. 164 of 1856, entitled "An Act to amend an Act entitled 'An Act to consolidate the city of New Orleans and to provide for the government of the city of New Orleans and the administration of the affairs thereof,'" are not repealed by the latter Act.

The former city authorities having had the power "to regulate every thing which relates to bakers," the present city authorities have not been deprived of it by the Act of 1856.

There is nothing unconstitutional in those parts of the city ordinance which regulate the weight and inspection of bread.

The authority given by the ordinance to seize bread unstamped or deficient in weight, and to conduct the offender before the Recorder to be by him dealt with, is not a violation of Article 6 of the amendments to the Constitution of the United States.

Violations of the city ordinances may be prosecuted before the Recorders of New Orleans, where it is so directed by law or the ordinance.

The forfeiture, for the use of the city workhouse, of bread illegally baked is not a violation of Art. 105 of the Constitution.

The contract spoken of by Article 105 of the Constitution, the obligation of which the Legislature is prohibited from impairing, is a contract in existence at the time of the passage of the law.

APPEAL from the Third District Court of New Orleans, *Kennedy*, J. *C. Dufour*, for plaintiff and appellant. *J. J. Michel*, for defendant.

MERRICK, C. J. This suit, commenced by injunction, is brought to cause the ordinance of the city "Establishing the assize and regulating the weight and inspection of bread," to be decreed illegal.

The question to be decided is thus stated by the plaintiff's and appellant's counsel, viz:

"The issue submitted to this court is whether there is any such law as would authorize the defendant to pass and enforce the ordinance referred to above,—marking out the bakers of New Orleans as a peculiar set of traders, and holding that the bread manufactured by their skill and labor is not property, and its worth depends not on the market price. If no such law exists, the ordinance is an

oppressive municipal assumption of power.   If a provision is designated, as a warrant for the action of the city, it must, like all legislation in derogation of common right, be strictly construed.   And the duty would then arise for this court to see how far such an exceptional law could stand the test of the Constitution."

The powers of the city of New Orleans are in part conferred by the Constitution of the State, and in part by legislative enactments.   It can have no other powers, from those sole sources of power, than those conferred either expressly or by necessary implication.

Assuming the title of the ordinance to express clearly it objects, has the Constitution or the Legislature conferred upon the city of New Orleans the right to pass the ordinance?

We find by the Act of 1816, the Legislature conferred upon the city, among other things, the right "To establish one or more market places, and to determine the mode of inspection for all comestibles sold publicly, either in said markets or in other places; to regulate everything which relates to bakers, butchers, tavern keepers, or to grog shops, and other persons keeping public houses, draymen, horse drivers, water carriers, and slaves employed as day laborers ; to fix the salaries of the said draymen, horse drivers, water carriers and day laborers, and to make any other regulation which may contribute to the better administration of the affairs of the said corporation, as well as for the maintenance of the police, tranquility and safety of said city."   This power however was accompanied by a proviso, that the Mayor and council should not have the power of fixing the price of any article sold in market or other places.   But in regard to butchers meat, and to the bakers of bread, the statutes of 1807 and 1814 seem to have expressly conferred the power to regulate the price, and by the 7th section of the Act of 1816 it was provided that no powers before granted were withdrawn from the Mayor and council by that Act.

When the city was divided into municipalities, in 1836, all the powers of the city government were conferred upon the respective municipalities, and these again were, by the twenty-second section of the Act of 1852, consolidating the city, conferred upon the new corporation.   Acts, 1852, p. 48.

But the Act of 1856, which is entitled "An Act to amend An Act entitled ' An Act to consolidate the city of New Orleans, and to provide for the government of the city of New Orleans and the administration of the affairs thereof,' " has, while making, in many respects, the most minute provisions for the administration of the government of the city, only vested the Common Council with " all the powers, rights, privileges and immunities incident to municipal corporations and necessary to the proper government of the same," thus adopting the precise language of the commencement of the 22d section of the Act of 1852, but entirely omitting the most important portion of that section which conferred upon the city " all the powers, rights, privileges and immunities possessed and enjoyed," as already observed, by the First, Second and Third Municipalities of New Orleans, and which provided further, that the ordinances in force in said municipalities should remain in full rigor, until modified or repealed by the Common Council.   Moreover, the 133d section of the Act of 1856 repeals all laws and parts of laws contrary to the provisions of the Act. The ordinance in question having been passed in October, 1856, two questions fairly arise, viz : Is the power to establish the assize and regulate the weight and inspection of bread, a power, right, privilege or immunity incident to a

municipal corporation, and necessary for the proper government of the same ?
If not, were the powers conferred upon the city or rather continued in the city
by the Act of 1852 repealed by the Act of 1856 ?

As it is the duty of municipal corporations, for the government of cities, to
have regard to the health of the same, it is possible that the Act of 1856, con-
sidered as an original Act and only charter of the city, might be held to confer
the power upon the city to prevent the sale of bread made out of unwholesome
flour and materials, and, as a consequence, cause the same to be inspected;
but we do not think it could be held, under any of the ordinary rules of con-
struction, to have conferred the right to regulate the assize, that is the weight
and price of bread, for this is a power not absolutely necessary for the proper
government of the city, although it is a power we presume expressly conferred
upon most cities by their charters.

It becomes important, therefore, to consider the second question, viz:
whether the Act of 1856 has repealed so much of the former law as conferred
the power upon the city to regulate the assize of bread?

It will be observed that the title of the Act of 1856, as recited, is to *amend*
the Act of 1852.   Under Article 115 of the Constitution it cannot, therefore, be
held a total repeal of that statute, nor does it under Article 116 *purport* to re-
enact and publish at length any portion of the twenty-second section of the Act
of 1852, although it has adopted a phrase from this section.   We conclude that
such portions of the Act of 1852 as are not contrary to the Act of 1856, are not
repealed by it.   The powers, therefore, conferred by the former Legislatures
upon the city, and embraced in the 22d section of the Act of 1852, and not con-
trary to nor inconsistent with it, have not been repealed.

The city, and formerly the municipalities, having had the right " to regulate
everything which relates to bakers," (provided they allowed them the proper
profit upon a barrel of flour,) the Act of 1856 has not deprived the present city
authorities of that power.

Coming now to examine the particular portions of the ordinance complained
of, we see nothing unconstitutional or illegal in those parts of the ordinance re-
quiring every baker to cause the bread to be marked with his initials or some
other mark, nor in regulating the size of the loaves of bread to be sold.   The
fifth section which authorizes, between the rising and setting of the sun, cer-
tain police officers to enter any bake-house, shop, store-house, &c., where bread
is kept, and stop and detain all bakers carrying bread for sale, to examine
whether the same is marked, and ascertain the weight thereof, and in case it is
unstamped, or wanting in weight, or not baked according to the ordinance, to
conduct the offender before the Recorder, there to be dealt with, is no violation
of Article 6 of the amendments to the Constitution of the United States.

That Article applies to process issued and searches made by officers of the
of the United States Government, and has no application, as a shield, to persons
who, by their employment, bind themselves to comply with certain police regu-
lations of the individual States, or of particular cities deriving their powers
from one of the States.

The Recorders of New Orleans, under the Constitution and laws of the State,
have certain judicial powers.   Offences for the violation of the city ordinances
may be prosecuted before them where it is so directed by law or the ordinance,
and we see nothing illegal in enforcing the penalties of the ordinance before the
Recorder.   The forfeiture of the bread illegally baked for the use of the city

workhouse is no more a violation of Article 105 of the Constitution, which pro-   <small>GUILLOTTE</small>
vides that vested rights shall not be divested unless for purposes of public     <small>*v.*</small><br><small>NEW ORLEANS.</small>
utility and for adequate compensation previously made, than is the fine of a
thousand dollars, or other sum, inflicted at the discretion of the court in the
case of a conviction for an assault and battery, or other offence.

The illegal bread, if it can be considered as having any value, and the penalty
in money denounced for crime, are *forfeited* to the State or city by reason of
the crime, and the State or city in exacting the penalty is not taking that which
is strictly the property of another in the sense of Article 105 of the Constitu-
tion.

Judgment affirmed.

---

### SAME CASE ON A RE-HEARING.

MERRICK, C. J. An application for a re-hearing has been made by the plain-
tiffs in this case, on the ground, that the argument of plaintiff's counsel on the
constitutional question has been entirely overlooked.

We think we misapprehended the force of the plaintiff's argument on one
branch of the case. As we understand it now, it is thus: that the Act of
the Legislature allowing the city authorities to fix the price of bread as well
as the size of the loaves to be sold, violates Articles one hundred and five and
one hundred and twenty-three of the Constitution, because it enables the city
to fix the price of bread below its market value, and thus take from the plain-
tiff, for the public use, the difference between the actual value and the price
fixed without compensation, and also imposes upon him a tax or burden which
is unequal, and not in proportion to the value of the property he sells with
referance to other property.

The contract spoken of by Article 105 of the Constitution, the obligation of
which the Legislature is prohibited from impairing, is a contract in existence at
the time of the passage of the law. The Article 105 has never been supposed
to infringe upon the power of the Legislature to regulate future contracts; a
power exercised by every people and inherent to sovereignty. Thus, our Legis-
lature has prescribed the forms and conditions of contracts, and, in the contract
of sale has declared that unless certain forms be observed the sale shall be null
as to third persons; that if the thing sold is affected by vices and defects the
purchaser may rescind it, that if the owner of an immovable should sell the
same for less than one-half of its true value, he may annul the same although
in his *contract* he had expressly abandoned the right of claiming such rescission,
and had declared that he gave to the purchaser the surplus of the value of the
thing sold. In these and the like cases there is no pretence that the obligation
of a contract had been impaired, because the law in force at the time enters
into and forms a part of the contract. If the supposed contract is made in vio-
lation of the law, it has no valid existence as a contract.

Now, when the lawgiver says to the baker, " you shall not make and
sell bread within certain boundaries unless you limit your profits to a certain
sum for each barrel of flour which you make into bread, and unless you con-
form to certain regulations as to the size of the loaves, the places and times of
sale," the obligation of no contract has been impaired, for none has been entered
into ; no vested right has been taken away, for no man has a vested right (un-

less the same be expressly granted by a special Act of the Legislature) to furnish a certain portion of the population with bread, and no tax has been levied upon the baker, for no part of the price of the bread goes into the public treasury, and it is entirely optional with him whether he will sell his flour or make it into bread, or pursue some other vocation.

Re-hearing refused.