## THE LIBERTY BELL.[1]

## BAYLE and others *v.* CITY OF NEW ORLEANS.[1]

*(Circuit Court, E. D. Louisiana. June 4, 1885.)*

1. MUNICIPAL LAW—MISAPPROPRIATION OF FUNDS.

An ordinance making an appropriation of the funds of a city, derived from taxation, for purposes wholly beyond the purview of municipal government, is a wrongful appropriation of the funds held in trust for the tax-payers and people to pay the alimony and legitimate expenses of the city, and is, in short, *ultra vires*, illegal, null, and void.

2. JURISDICTION—INJUNCTION.

Resident tax-payers have the right to invoke the interposition of a court of equity to prevent an illegal disposition of the moneys of a municipal corporation or the illegal creation of a debt which they, in common with other property holders, may otherwise be compelled to pay. *Crampton* v. *Zabriskie,* 101 U. S. 609.

In Chancery. Rule for an injunction.

*Edgar H. Farrar, E. B. Kouttschnitt, Charles B. Singleton, Richard H. Browne, Benj. F. Choate, Edward D. White, Eugene D. Saunders, John H. Kennard, W. W. Howe, S. S. Prentiss,* and *Charles E. Schmidt,* for complainants.

*Walter H. Rogers,* City Atty., for defendants.

PARDEE, J. An injunction, *pendente lite,* is asked on the following bill:

"Joseph Bayle, a resident of the city of New Orleans and state of Louisiana, and a citizen of the French Republic, brings this bill of complaint against the city of New Orleans, a municipal corporation organized under the laws of the state of Louisiana, and as such a resident of said state, and against Isaac W. Patton, treasurer, and John N. Hardy, comptroller, of the city of New Orleans, both citizens of the state of Louisiana, and residing in this district.

"And thereupon your orator complains and says: That your orator is a resident tax-payer of the city of New Orleans, who pays annually into the city treasury municipal taxes exceeding $500 in amount; that some time in the year 1884, the city of Philadelphia was applied to by the World's Industrial and Cotton Centennial Exposition to allow a certain bell, well known as the 'Liberty Bell,' to be sent to New Orleans and put upon exhibition on the grounds of the said exposition company; that the said bell was transmitted to New Orleans by the city of Philadelphia, and placed upon exhibition in the exposition grounds, with some agreement or understanding that the said bell should be considered as in the custody of the corporation of the city of New Orleans, and that it should be returned to the city of Philadelphia at the close of the exposition, on or about the thirty-first of May, 1885; and that said bell was, as your orator is informed and believes, and so charges, brought to the city of New Orleans by rail, and without charge, and that the committee or persons in charge of said bell were also brought to the city of New Orleans free of transportation expenses.

"Your orator is informed and believes, and so charges, that any of the rail-

1 Reported by Joseph P. Hornor, Esq., of the New Orleans bar.

roads leading out of the city of New Orleans are now willing and anxious to haul the said bell back to Philadelphia free of charge, and also to transport to and from Philadelphia such reasonable committee of persons as may be appointed to take charge of it; that the council of the city of New Orleans have organized a junketing expedition to go to Philadelphia, ostensibly in charge of the said bell, and did, on the twenty-seventh day of April, 1885, by ordinance No. 1,214, council series, make an appropriation of $5,000 out of the public treasury of the city of New Orleans, stating that the same was for the purpose of defraying all expenses which might accrue by the return of the liberty bell from the exposition grounds to the city of Philadelphia at the close of the exposition, and directing by the said ordinance that the comptroller should warrant upon the treasurer whenever there were funds in the treasury to pay this appropriation.

"Now, your orator avers that this appropriation under ordinance 1,214 is absolutely null, void, and of no effect or validity; that the removal of the said liberty bell, and the contract, agreements, and understandings with reference thereto are beyond the corporate authority of the city of New Orleans, and that the city council has no power to expend any money for any of the purposes mentioned in said ordinance No. 1,214.

"Further complaining, your orator avers that he is informed and believes and so charges, that the said city of New Orleans, through some of its officials, have agreed with the Northeastern Railroad Company to take the said bell back to Philadelphia free of cost of transportation, and that the said Northeastern Railroad Company has agreed to give free passes to a sufficient number of persons as a committee in charge of said bell; the same not being, from any point of view, legitimate municipal expenditures within the power of the city of New Orleans; that your orator, in company with all other taxpayers of the city of New Orleans, will receive irreparable injury and damage from this unlawful appropriation of public money, and that they are entitled to the protection of a court of equity to enjoin and restrain this void act, as they and your orator are entirely without remedy in a court of law."

The allegations of fact in the bill are substantially shown by affidavit and are not denied. The counter-affidavits show that the board of two policemen of Philadelphia, in charge of the liberty bell, has been paid for the last two months by the city, and that the city has paid for the symbolical decoration of said bell, which expenses are expected to be met by the appropriation under the said ordinance. There is no doubt that the said ordinance makes an appropriation of the funds of the city of New Orleans derived from taxation for purposes wholly beyond the purview of municipal government; is a wrongful appropriation of the funds held in trust for the tax-payers and people of New Orleans to pay the alimony and legitimate expenses of the city; and is, in short, *ultra vires*, illegal, null, and void. See acts La. 1882, No. 20, pp. 20, 21, §§ 7, 8; 1 Dill. Corp. § 52 *et seq.;* *Hood* v. *Lynn,* 1 Allen, 103; *Tash* v. *Adams,* 10 Cush. 252; *Claflin* v. *Hopkinton,* 4 Gray, 502; *Murphy* v. *Jacksonville,* 18 Fla. 318; *Grant Co.* v. *Bradford,* 72 Ind. 455; *Henderson* v. *Covington,* 14 Bush, 312; *Cornell* v. *Guilford,* 1 Denio, 510; *Hodges* v. *Buffalo,* 2 Denio, 110; *Halstead* v. *Mayor, etc., of New York,* 3 N. Y. 433; *New London* v. *Brainard,* 22 Conn. 552.

The principle that a municipal corporation càn have no other power than those derived from constitutional or legislative grants, expressly

or by necessary implication, is well settled in Louisiana, and is settled for the city of New Orleans in *Guillotte* v. *New Orleans,* 12 La. Ann. 432.

The illegality and nullity of the ordinance being clear, the question remaining for decision is as to the jurisdiction and propriety of an injunction in this particular case. "In this country, the right of property holders or taxable inhabitants to resort to equity to restrain municipal corporations and their officers from transcending their lawful powers, or violating their legal duties, in any mode which will injuriously affect the tax-payers,—such as making an unauthorized appropriation of the corporate funds, or an illegal disposition of the corporate property, or levying and collecting void and illegal taxes and assessments upon real property, under circumstances presently to be explained,—has been affirmed or recognized in numerous cases in many of the states. It is the prevailing doctrine on this subject." Dill. Mun. Corp. § 731.

In *New London* v. *Brainard,* 22 Conn. 552, which was a case of injunction to restrain appropriation to celebrate the fourth of July, the supreme court of Connecticut, in holding that a citizen and tax-payer is entitled to an injunction to restrain an illegal appropriation of the money of the city, said, in substance, that it is so because the city corporation holds its moneys for the corporators, to be expended for legitimate corporate purposes; and a misappropriation of these funds is an injury to the tax-payer, for which no other remedy is so effectual or appropriate. See Dill. § 732 *et seq.,* for the many cases sustaining this doctrine.

And in *Crampton* v. *Zabriskie,* the supreme court of the United States seem to indorse fully the position of Dillon, for that court says:

"Of the right of resident tax-payers to invoke the interposition of a court of equity to prevent an illegal disposition of the moneys of the county, or the illegal creation of a debt which they, in common with other property holders of a county may otherwise be compelled to pay, there is at this day no serious question. The right has been recognized by the state courts in numerous cases; and from the nature of the powers exercised by municipal corporations, the great danger of their abuse, and the necessity for prompt action to prevent irremediable injuries, it would seem eminently proper for the courts of equity to interfere upon the application of the tax-payers of a county to prevent the consummation of a wrong, when the officers of those corporations assume, in excess of their powers, to create burdens upon property holders. Certainly, in the absence of legislation restricting the right to interfere in such cases to public officers of the state or county, there would seem to be no substantial reason why a bill by or on behalf of individual tax-payers should not be entertained to prevent the misuse of corporate powers. The courts may be safely trusted to prevent the abuse of their process in such cases. Those who desire to consult the leading authorities on this subject will find them stated or referred to in Mr. Dillon's excellent treatise on the Law of Municipal Corporation." *Crampton* v. *Zabriskie,* 101 U. S. 609.

There being no doubt as to the illegality of the ordinance and the appropriation, and no reasonable doubt as to the appropriateness of

the remedy sought, nor as to the jurisdiction of the court, the patriotic phase of the case is not potent enough to affect the action of the court. If, in Massachusetts, Connecticut, New York, Virginia, and other states, municipal corporations are not permitted to encourage and disseminate patriotism and the love of liberty by celebrations, at municipal expense, of the fourth of July, the surrender of Cornwallis, and other stirring epochs in the history of the country, there would seem to be no reason why this court should hold its hand, and not prevent the city of New Orleans, at the expense of her tax-payers, from advertising the patriotism of her mayor, council, and citizens by appropriate ceremonies and enthusiasm and decoration, in the return of the famous and honored liberty bell to the city of Philadelphia.

As was aptly suggested by counsel in argument, municipal corporations *per se* exhibit the highest patriotism in obeying the laws made for their government.

Under the circumstances and law of this case it seems the plain duty of the court to grant the injunction as prayed for; and it is so ordered.