## HOYT v. GLEASON et al.

### (Circuit Court, N. D. Ohio, E. D.   October 10, 1892.)

### No. 5,019.

1. DEDICATION—CONTROL OF PUBLIC SQUARE—FOLLOWING STATE COURTS.
     In 1796, the C. Land Co., the owner of the land upon which the city of C., Ohio, was afterwards built, by a map laying out such city, dedicated a part of the land for a public square, marked "common" on said map. There was no written or other specific definition of the purposes for which such public square was intended to be used. The fee of the land composing the square was subsequently vested, by an act of the territorial legislature, in the county in which it lay, in trust for the purposes intended. After the incorporation of the city of C., in 1826, the control of the square was vested in it by the legislature. In 1888 the legislature created a board of monument commissioners, and gave it authority to control the uses of said square to the extent of placing upon it a soldiers' monument. The courts of Ohio had decided that the board of monument commissioners was a public authority, lawfully constituted to control the public uses of the square to that extent. H., an owner of land abutting on the square, which she held by mesne conveyances from the C. Co., the original dedicator, sought to enjoin the use of the square for the monument. *Held*, that the federal court was bound by the decision of the state court as to the authority of the monument commissioners to control the public uses of the square.
2. SAME—PUBLIC USE—OBLIGATION OF CONTRACTS.
     *Held*, further, that, in view of the form of the dedication, the uses of the square were not limited, except to such as were public uses, and that the erection of a monument was a public use, and therefore not a violation of the contract of dedication.
3. SAME—CHANGE OF TRUSTEE.
     *Held*, further, that no contract was implied by the dedication that the city of C. should be the irremovable trustee of the land constituting the square.

This was a suit by Emma A. Hoyt against W. J. Gleason and others, composing the board of monument commissioners of the city of Cleveland, Ohio, to enjoin the erection of a monument on the public square in that city. The plaintiff obtained a temporary restraining order, and now moves to have the same continued until final hearing.

Boynton & Horr and Webster & Angell, for complainant.

L. Prentiss, J. M. Jones, and A. T. Brinsmade, for respondents.

Before TAFT, Circuit Judge, and RICKS, District Judge.

RICKS, District Judge. The complainant, as a tenant in common, owns a part of the property known as the "Forest City House," which abuts upon the public square, in the city of Cleveland. She has filed her bill, and seeks, as such property owner, to enjoin the defendants from erecting upon the southeast quarter of said public square a monument or mausoleum to commemorate the services of the soldiers from Cuyahoga county who died in the army during the late Civil War. She avers that said public square, when the city thereafter to be incorporated was platted, was dedicated by the Connecticut Land Company, the original owners in fee of the land, as a common, for the enjoyment, use, and benefit of the public of said city when duly organized. She avers that said dedication gave to her, as a joint owner of property abutting said square, by mesne conveyance from said original grantor and dedicator, a vested right to have said common or public square forever applied for such public uses as the people of the city to be organized thereafter might determine, provided such uses were within the terms of the dedication. She further avers that the defendants, who are organized under the statutes of Ohio as a "board of monument commissioners," propose to erect upon said quarter of the public square a structure called a "soldiers' monument," which is in fact a stone building 44 feet square and 20 feet high, constructed upon an elevated stone esplanade about 100 feet square, out of which a stone shaft arises 120 feet high; and that this structure is of such proportions and shape as to monopolize the greater portion of that quarter of the square, and is to have such rules and regulations as to its control, when completed, as to limit and curtail the public in their right to its use and enjoyment; and, therefore, that said public square is to be applied to a use not a public one, within the spirit and scope of the dedication. She avers that the city has never legally given said defendants any authority to occupy said square for the purposes named; and that the sole power to grant the use of any part of said square for public purposes is vested in the park commissioners, who are a branch of the municipal government; and that said commissioners have repeatedly refused to allow the square to be occupied or used by the defendants for said monument. This misapplication of the use to which said common was dedicated by the legislative enactment authorizing said monument commissioners to occupy it for the purposes named, and their attempted use of the same for such purposes, the complainant avers, is in violation of her contract and vested rights by state authority, and is therefore in contravention of the constitution of the United States. The defendants answer that they are acting under the authority conferred by the legislative enactment of April 16, 1888, and that the power to determine the public uses to which the public square in Cleveland is to be applied is vested in the state legislature, which is the creator of

municipal corporations in Ohio, and vested with the power to define the limit of their municipal powers. The validity of the act under which they were appointed, and are now exercising their powers, has been affirmed by the supreme court in a suit involving substantially the same issues now presented for our consideration. It is contended that the decision of the supreme court construing the scope and validity of this act of the legislature is the voice of the highest judicial tribunal of the state, affirming the authority of the legislature to prescribe the public uses to which the public square of a city may be applied; and that this court, sitting within the state of Ohio, to administer the laws of that state, when not in conflict with the constitution and laws of the United States, must follow such decision. The principle claimed is undoubtedly correct. The supreme court of the United States, in repeated decisions, has well defined the class of cases in which the courts of the United States may construe the law for themselves, and in as many decisions has as clearly held that as to the scope and application of state laws, when not in conflict with the constitution and laws of the United States, the construction given to them by the highest courts of the state is binding upon us.

It is therefore important to determine how far the rights of the complainant in this case are fixed and controlled by the statutes of Ohio. At the time the dedication of the common or public square was made, in 1796, the city of Cleveland was not yet created. The fee to the public square so set apart for public uses was held in abeyance until the act of December 6, 1800, when it vested in the county in which the land was then located, "in trust to and for the purposes therein named, expressed or intended, and for no other use or purpose whatsoever." 1 Chase's St. 291. There was nothing upon the map or plat defining the use intended, except that the space denoting the present public square and streets about it was to be used as a "common." This was the word used in the statute. The dedication was for the public of the city of Cleveland, to be thereafter organized under authority of the legislature, and for its inhabitants. But to what uses was this dedication made? If the grantors had made the nature of their grant specific in written terms, there is no doubt but that the city of Cleveland (or even the legislature of Ohio, if vested with supreme authority over this trust, as claimed) would be held by the courts to strictly apply the common to the uses defined, and to no other. But no such written terms were stated. The grant was made as a common, or public square; and the uses to which it was dedicated are the uses to which the courts have held that property similarly dedicated in other cities in Ohio can be applied. We have, then, a dedication of this public square to public use, with the people of the city of Cleveland claiming to be sole trustee, to determine in what manner and to what public use it shall be applied. If we grant that the complainant has a vested right as an abutting owner of valuable property on the square to have it applied to the uses intended by the grantors, what is the nature and extent of this vested right? It cannot be to give to her or her grantees the right to say what shall constitute a pub-

lic use of this square. Her grantors, as the original donors of the square, did not see fit to clearly define the extent and character of the uses to which it should be applied, as they might have done if they intended or expected the uses to be limited or specific. They simply set apart an open space on the plat, and marked it "common." This leaves the nature and extent of the uses to which the common may be applied to be determined by the trustee, under proper legal principles, provided such uses are public uses. What are "public uses," within the meaning of a dedication so made, is well settled by repeated decisions in Ohio, beginning with the earliest reports of the supreme court, and following down to the latest. It has been held that a courthouse was a public use, to which such space or common might be applied.

In the case of Langley v. Town of Gallipolis, 2 Ohio St. 108, the supreme court has said:

"Such a place [a common], thus dedicated to the public, may be improved and ornamented for pleasure grounds and amusements, for recreation and health; or it may be used for the public buildings and place for the transaction of public business of the people of the village or city; or it may be used for purposes both of pleasure and business."

It appears from the stipulation as to facts filed in this case that two courthouses were once placed on this square,—one on the northwest quarter, and one on the southwest quarter. These public buildings have been removed, and the square, with streets running through it, has for years been open and unobstructed. We think it fairly established, then, by the decisions of the supreme court of Ohio and other states, that a public monument may properly be erected on a public square, and that such appropriation of public ground is a public use for public purposes. The size of the monument, its artistic merit, as well as the judgment exercised in the selection of the site, are not matters for the consideration of this court. They are within the discretion of the public authority to whom by law the control of the public square is intrusted. In this case no dedicated street is to be obstructed by the monument. The diagonal paths through the southeast quarter of the square are not highways in which the public have acquired a vested right, but they are, like the walks of a park, subject to change at will of the lawful authorities in control. The access to complainant's property will not be interfered with in the slightest degree. We therefore conclude that the use proposed is within the uses to which the square was dedicated.

As before stated, the supreme court of Ohio has decided that the soldiers' monument commission is a public authority, lawfully constituted by act of the legislature to control the public uses of the public square to the extent of erecting thereon the soldiers' monument. This decision determines finally the right of the legislature of Ohio, so far as the limitations imposed by the state constitution are concerned, to provide for the appointment of the commission, and to confer on it the powers given in the act. That decision is final as to the validity of that statute.

The only question, therefore, left to us upon which we can exer-

cise an independent judgment, is, as before stated, whether the act of the legislature under which the defendants are about to proceed violates the federal constitution by impairing the obligation of the contract of dedication from which the complainant has derived rights in the public square as an abutting property owner. The claim that this contract is impaired by an improper use of the square, not within the scope of its original purpose, we have already found to be untenable. It remains only to consider the second claim; i. e. was the city of Cleveland, by the contract of dedication, made the irremovable trustee to manage and control the uses of the public square, so that an attempt by the legislature to substitute another trustee is a breach of the contract? The dedication was made originally in 1796, and by subsequent record in 1801, by town plat recorded under the territorial statute in what was then Trumbull county, and in 1814, by record in the present Cuyahoga county. The plat was designated on its face as the plat of the city of Cleveland. By virtue of the statute, the public ground marked on the plat was vested in fee in the county for the uses therein specified, and none other. The present public square, as shown on the face of the plat, bears no name or descriptive title, but it is described in the survey recorded with the plat as the "square." It may be conceded that this constituted a dedication of the land as a public square to the public uses of the inhabitants of the future city of Cleveland and the neighborhood; i. e. to the uses of the local public, as distinguished from those of the public of the state at large. But from this no implication arises that the future corporation of Cleveland was to be the sole and irremovable trustee. The grant was not to the city of Cleveland. The fee was in the county, and is probably there still. After Cleveland was incorporated, in 1826, control over the square was vested in its common council. The city would never have acquired any control over the square but for an act of the legislature subsequent to the dedication. If so, may not the legislature of the state again change that control? The dedication was made before there was a state constitution, a state legislature, or an incorporated city. The dedicators must be held to have known that the whole people of Ohio had it in their power to impose such systems of local government as they saw fit upon any part of the state, including that part where it was intended the city of Cleveland should be. The presumption is not to be indulged, therefore, that they intended in their dedication to limit anything but the public uses to which the square should be put. They did not attempt to name the public authority which should control the square or common within those uses. Even if they had, they would have done this with the knowledge that the power of such public authority might be taken away, and another substituted at the will of the legislature, and would be presumed to have contemplated a possible change of trustee. As it was, no trustee was named; and it must be inferred that the whole question as to who should be the trustee of the uses was left to the sovereign power of the state.

We conclude, therefore, that it was no impairment of the original contract of dedication for the state, by act of the legislature, to substitute as trustee another local authority in place of the city to control the special public use to which this particular section of the square might be applied. The monument commissioners, in selecting that site, are therefore acting within the power lawfully conferred, and have a right to proceed with the work already begun. The temporary restraining order heretofore allowed will be set aside, and the application for a preliminary injunction be denied.

The conclusion we have reached is in accordance with the principles of law involved as we understand them, after patient examination. Our personal views as to whether the location chosen is the best and most suitable have not in the least influenced us. Those are considerations not presented in the record, and upon them we have no right to express an opinion. It is with the law of the case alone that we have dealt.