MARY L. PARSONS, a Taxpayer of the City of New York, Appellant, *v.* ROBERT A. VAN WYCK, Mayor of the City of New York, and Others, Respondents.

*Monument in Riverside Park, New York city — right to erect it — right of the city to issue bonds to pay for it — approval, from whom to be obtained.*

The erection in Riverside Park, upon the crest of a hill surrounded by trees and beside a broad driveway on one side and the open river on the other, of a monument of great size, consisting of an esplanade or platform measuring one hundred and twenty feet in length and rising about eight feet above the grade

of Riverside drive, upon which esplanade is placed a solid base about twenty-nine feet in height and of a diameter varying from fifty-four feet to about thirty-eight feet, upon which base is placed a structure about thirty-four feet in diameter, consisting of columns closely surrounding a core which rises to a further height of about thirty-six feet, upon which colonnade is a cap or final superstructure rising to a further height of thirty-three feet, so that the total height of the monument above the esplanade is nearly one hundred feet, constructed under the authority of chapter 522 of the Laws of 1893, authorizing the construction of "a suitable memorial arch or monument in memory of the soldiers and sailors of New York, who died in the service of their country in the late war for the Union," does not constitute a breach of the trust upon which Riverside Park is held by New York city, viz., that the same be appropriated and kept open for and as part of a public street, avenue, square or place forever in like manner as the other public streets, avenues, squares and places in said city.

The Legislature, in using the word "arch," did not intend to confine the commission appointed to carry the project into effect to that particular form of memorial.

Although the act designated the members of the commission by their official titles, and not as individuals, the fact that the original members of the commission have ceased to hold office, or that their offices have been abolished and the duties incident thereto have devolved upon other officers, does not affect the continued vitality of the act.

The charter of Greater New York (Laws of 1897, chap. 378) repeals so much of chapter 108 of the Laws of 1896 as requires the approval of such a monument by the president of the board of aldermen and the president of the National Sculpture Society by substituting the art commission as the body whose approval is required.

The construction of such a monument serves a legitimate city purpose, and, consequently, chapter 522 of the Laws of 1893, authorizing the city of New York to issue bonds to pay therefor, does not violate that portion of section 10 of article 8 of the Constitution of the State of New York, which provides that "No county, city, town or village shall hereafter give any money or property or loan its money or credit to or in aid of any individual, * * * nor shall any such county, city, town or village be allowed to incur any indebtedness except for county, city, town or village purposes."

APPEAL by the plaintiff, Mary L. Parsons, a taxpayer of the city of New York, from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 29th day of June, 1900, denying her motion to continue an injunction *pendente lite*.

*Henry A. Prince*, for the appellant.

*Theodore Connoly*, for the respondents.

O'BRIEN, J. :

The action was brought by a taxpayer to restrain an alleged unlawful expenditure of city money by the defendants as members of "The Soldiers and Sailors' Memorial Arch Commission of the City of New York," provided for by chapter 522 of the Laws of 1893, in erecting a proposed memorial monument in Riverside Park near Eighty-ninth street. A temporary injunction was obtained, but a motion to continue it *pendente lite* was denied, and from the order entered thereon this appeal is taken.

The act in question under which the defendants are proceeding (Chap. 522, Laws of 1893) is as follows :

"AN ACT to provide for a soldiers' and sailors' memorial arch in the city of New York.

" *The People of the State of New York, represented in Senate and Assembly, do enact as follows :*

"SECTION 1. The mayor, aldermen and commonalty of the city of New York may erect at such place as the department of parks of the city of New York shall designate for that purpose under the direction of the persons and in the manner hereinafter named a suitable memorial arch *or monument* in memory of the soldiers and sailors of New York, who died in the service of their country in the late war for the union, which monument or arch shall be called ' the soldiers' and sailors' memorial arch of New York.'

" § 2. The mayor, the commissioner of public works, the president of the board of parks, the recorder, the comptroller, together with the chairman of the memorial committee of the grand army of the republic of the city of New York, are hereby designated as a board of commissioners, authorized in its discretion to carry into effect the provisions of this act, and to be known as ' the board of commissioners of the soldiers' and sailors' memorial arch of the city of New York.' The commissioners shall receive no compensation for their services.

" § 3. The said board of commissioners may in its discretion cause to be prepared plans and designs for the memorial arch or monument, and may in its discretion cause the said arch or monument to be erected without delay, at a total cost including the expense of plans and designs, not exceeding two hundred and fifty thousand

dollars, to be paid by the comptroller upon the certificate of the said board of commissioners from time to time, as it shall direct.

" § 4. For the purpose of providing means for carrying this act into effect, it shall be the duty of the comptroller upon being thereunto authorized by the board of estimate and apportionment to issue bonds or stock of the mayor, aldermen and commonalty of the city of New York and sell the same at not less than par value thereof. The interest on such bonds or stock shall not exceed three per centum per annum. The bonds shall be payable by taxation in thirty years from the issue thereof. The board of estimate and apportionment may grant the necessary authority to the comptroller when the board of commissioners of the soldiers' and sailors' memorial arch shall certify in writing that they have selected the site, the plan and design and are ready to begin the erection of the arch.

" § 5. This act shall take effect immediately."

The plaintiff alleges that the city of New York is seized of the fee in lands composing Riverside Park (where it is proposed to erect the monument), " upon the trust that the same should be kept open as a public square forever, free and unobstructed by any buildings or other structures thereon which should impede or hinder the view or the free passage of light and air across the same; " that the said monument which said defendants intend to erect upon a narrow plateau in said Riverside Park, " is of great size and consists of an esplanade or platform measuring one hundred and twenty feet in length north and south and rising about eight feet above the grade of Riverside Drive at that point; upon which esplanade is to be placed a solid base about twenty-nine feet in height and of a diameter varying from fifty-four feet to about thirty-eight feet, upon which base is to be placed a structure about thirty-four feet in diameter, consisting of columns closely surrounding a core which rises to a further height of about thirty-six feet; upon which colonnade is a cap or final superstructure rising to a further height of thirty-three feet, so that the total height of the monument above the esplanade is nearly one hundred feet   *   *   *   so constructed as to cut off the entire flow of light and air over and across the land upon which it is to be situate and so as to shut off entirely the view and prospect over and across such land; " that the defendants wrongfully and illegally intend to expend the sum of two hundred and fifty thousand dol-

lars of public moneys for the purpose mentioned " without the con-
curring action of the Commissioner of Public Works * * * and
without the due and lawful approval of the Department of Parks
* * * and the Art Commission of the City of New York and
without the due and lawful approval of the Mayor, President of the
Board of Aldermen, President of the National Sculpture Society and
President of the Municipal Art Society."

The defendants admit that the monument proposed to be erected
is practically of the general character and description alleged by
plaintiff, but deny that they are acting illegally and that the said
monument will shut off the flow of light and air across such land or
the view and prospect over it, and allege that the lands composing
Riverside Park were acquired by the city in pursuance of chapter
86 of the Laws of 1813, "in trust, nevertheless, that the same be
appropriated and kept open for and as part of a public street,
avenue, square or place forever in like manner as the other public
streets, avenues, squares and places in said city." They also allege
that the said park was laid out under chapter 697 of the Laws of
1867, and the commissioners of Central Park were then authorized
to acquire title for the public and to make rules and regulations in
respect to the use thereof, which powers subsequently passed to the
commissioners of the department of parks under the New York
Consolidation Act (Laws of 1882, chap. 410), and, by the Greater
New York charter (Laws of 1897, chap. 378), to a park board, known
as the commissioners of parks, by virtue of which powers the defend-
ant Clausen, who is president of the park board, "sat in judgment
upon the question of the selection of a site as well the selection of
the style of the monument or arch in question, and gave his willing
approval to both before this action was brought, as he had a right to
do, and subsequently, and since this action was brought, * * *
the Board of Parks, as a board, sanctioned and approved his action
in the premises, and approved the selection of the monument and
site in question." The defendants further allege that they have
carefully deliberated upon the form and site of the monument after
obtaining the advice of competent architects and the approval of the
art commission.

Upon this appeal it is contended that chapter 522 of the Laws of
1893, under which the defendants are proceeding, "is unconstitu-

tional as attempting to authorize an expenditure of city money for other than a city purpose; furthermore, that if valid this law does not confer power upon the defendants to erect the specific structure they threaten to erect, nor even to act at all; still further, that the erection in Riverside Park of the structure they have approved of will be unlawful as constituting a breach of the trust in which the park is held; and, finally, that the defendants are acting in contravention of chapter 108 of the Laws of 1896, which should govern them if they have any authority to act."

Our attention is called to the fact that such enactment (Laws of 1896, chap. 108) forbids the erection of any monument on any ground belonging to the city without the approval, among others, of the president of the board of aldermen and the president of the National Sculpture Society. This law of 1896, it is contended, was not repealed by the charter, although it is admitted that section 1608 of the charter provides that acts of the Legislature then in force "relating to or affecting the *local government* of the city of New York, as heretofore constituted," are repealed so far as any provisions thereof are inconsistent with the charter or "so far as the subject-matter thereof is revised or included in this act, and no further." And it is further admitted that some of the provisions of the act of 1896 are contained in section 637 of the charter. We think the charter repeals so much of the act of 1896 as requires the approval of the president of the board of aldermen and the president of the National Sculpture Society by substituting the art commission as the body whose approval is required.

Section 616 of the charter provides that whatever powers and rights and duties affecting the "control, care, management, government, extension, maintenance or administrative jurisdiction of the parks, squares and other public places situated or lying within the boroughs of Manhattan and Richmond" had been vested in "the corporation known as the mayor, aldermen and commonalty of the city of New York or the department of parks in said city or the commissioners of parks or in any other board, body or officer therein or thereof," shall be imposed upon the commissioner for the boroughs of Manhattan and Richmond in addition to his other powers, right and duties. This commissioner has approved of the project. And by sections 633–639 whatever other authority was by the act of 1896

vested in boards or officers not of the city government was, we think, given to the art commission of the city of New York, who have also approved the erection of the monument. The act of 1896, therefore, so far as it related to the question here raised by the appellant, was repealed by the charter and has no bearing upon the determination to be reached. There is no more force in this than in the plaintiff's former contention that not only the consent of the president of the board of aldermen and the president of the National Sculpture Society had not been obtained, but also that the commissioner of public works, the department of parks, the art commission, the mayor and the president of the Municipal Art Society had not concurred in the erection of the proposed monument.

The contention that the erection in Riverside Park of the structure in question will be unlawful as constituting a breach of the trust in which the park is held, is likewise untenable. This precise question was considered and disposed of adversely to the appellant in the case of *Clark* v. *City of New York* (54 App. Div. 631), which was argued at the October term of this court, but as no opinion was handed down it is proper to briefly consider it. It is urged that " the site selected lies in that part of so-called Riverside Park which was opened in 1868. It had been laid out by the commissioners of Central Park under chapter 697 of the Laws of 1867 as a 'public square or place,' being so designated on the map of the laying out. This law of 1867 directed that this laying out done by the commissioners of the Central Park should be ' with the same intent and effect as if the same had been laid out and established' under the act of April 3, 1807 (Chap. 115), and further directed that proceedings for opening the streets and places should be had under the acts then in force. The fundamental acts then in force were this act of 1807 and also the act of 1813 (Chap. 85* of Revised Laws of 1813). This latter act, in section 178, provided that land acquired by the city for streets, public places, etc., should be held ' in trust nevertheless, that the same be appropriated and kept open for or as part of a public street, avenue, square, or public place forever in like manner as the other public streets, avenues, squares and places of the said city are and of right ought to be.' " And it is contended that the words of the act of 1813, " In trust  *  *  *  that the

---

* *Sic.*

same be  *  *  *  kept open for  *  *  *  a public  *  *  *
place forever," meant free from buildings of any sort, and that the
proposed monument will interfere with the passing of air and light
across the park and will interfere with the prospect over it so that
the land is not kept "open."

Bearing in mind the facts stated by the plaintiff and not denied
by the defendants as to the general character of the monument pro-
posed to be erected, we do not think it is shown that the memorial
in question, situated as it is upon the crest of a hill, surrounded by
trees and beside a broad driveway on one side and the open river on
the other, will impede the free passage of light and air or obstruct
the view across the park. The monument is not a building in the
sense used by the appellant; and, after its erection, the park would
still be an open place or square as intended in the act of 1813. The
placing of monuments and statues in parks is a generally recognized
and legitimate use of such parks whether such monuments are
purely ornamental or include the idea of a memorial. We do not
think, therefore, that the erection of this monument will be unlaw-
ful as constituting a breach of the trust in which the park is held.

Another of the questions presented is whether the erection of
the proposed monument by the defendants is authorized by chapter
522 of the Laws of 1893 under which they assume to act. In this
connection it is shown that the title of the enactment refers to a
" Memorial Arch " and appoints a " board of commissioners of the
soldiers' and sailors' memorial arch of the city of New York;"
and it is urged that although the word " monument " is used in the
statute, it is the general word, " arch " being the specific word, which
limits the form of the structure to be erected; and that the defend-
ants propose to erect not an arch, but a cylindrical pillar. We think
that the distinction attempted to be thus drawn is more fanciful than
real. The words "arch" and "monument" are used alternately in
the various sections of the chapter and it is expressly provided that
the board of commissioners is " authorized in its discretion to carry
into effect the provisions of this act." The language employed does
not evince an intention on the part of the Legislature to insist that an
arch and no other form of memorial should be erected by the com-
missioners on whom it conferred such general powers. The appel-
lant contends further that as the statute under which the defendants

claim authority went into effect on May 2, 1893, when the defendants were not in office, they have no power to act in the premises. The statute does not mention individuals, but refers to officers, and the fact that the individuals who then held office have ceased to hold the same or that the offices themselves have since been abolished, is immaterial, since new officers were created in their stead by the charter upon whom the rights and duties possessed by the old have devolved.

This brings us to what we consider the most serious question presented, namely, whether the act of 1893 is unconstitutional as attempting to authorize an expenditure of city money for some other than a city purpose. The respondent insists that as this point was not raised at Special Term, it may not be urged for the first time upon appeal. As a general proposition this is true (*Consolidated Ice Co.* v. *Mayor*, 53 App. Div. 260 ; *Cleary* v. *Long Island R. R. Co.,* 54 id. 284), but where the parties' rights are dependent upon a statute, the court may always, before passing upon those rights, consider whether the statute is or is not constitutional. Thus we are brought to the consideration whether chapter 522 of the Laws of 1893 violates that portion of section 10 of article 8 of the State Constitution which provides : " No county, city, town or village shall hereafter give any money or property or loan its money or credit to or in aid of any individual, * * * nor shall any such county, city, town or village be allowed to incur any indebtedness except for county, city, town or village purposes." Or, in other words, whether the expenditure of money in erecting in such place as the department of parks shall designate, a memorial arch or monument, is for a city purpose.

The difficulty of defining what is a city purpose lies in the fact that the government of a city extends not alone to furnishing necessities of a public character, but also to providing parks with their necessary adornments, and resorts of health and recreation and museums, botanical and zoological gardens intended for educational purposes, and many other objects that might be mentioned which tend to beautify the city and to contribute to the comfort, health and convenience of the entire people. Speaking generally, what undoubtedly was aimed at by the constitutional provision, was to prevent the appro-

priation of moneys raised by taxation for private enterprises and purposes as distinguished from public, and although every public purpose is not necessarily a city purpose, yet where the object sought is to promote the welfare of all the citizens, and the advantages to be derived from the proposed appropriation are common property and are within the legitimate scope of municipal enterprises in the way of securing the advancement, the education, the convenience, the health of the people and the adornment of the city, it is competent for the Legislature to authorize the expenditure. And the great extent to which the Legislature may go in this direction is evidenced by the permission recently granted to control and operate the rapid transit railroad, the acts conferring which permission have been sustained by our courts as constitutional, thus bringing within the definition of a city purpose a project which had heretofore been regarded as a proper subject for private enterprise and going a long way to inaugurate a policy which would bring under municipal ownership public utilities.

As said in *People ex rel. Murphy* v. *Kelly* (76 N. Y. 475, 487), " It is impossible to define in a general way with entire accuracy what a city purpose is, within the meaning of the Constitution. Each case must largely depend upon its own facts, and the meaning of these words must be evolved by a process of exclusion and inclusion in judicial construction. * . * * The Legislature when legislating in view of this constitutional limitation, must determine in the first instance what is a municipal purpose. Its decision is not, however, final. When its act is challenged as in conflict with this constitutional limitation, the courts must determine whether debt is authorized to be incurred for a purpose not municipal. But as the dividing line between what is a municipal purpose and what is not, is, in many cases, shadowy and uncertain, great weight should be given by the courts to the legislative determination and its action should not be annulled unless the purpose appears clearly to be one not authorized. As said by Judge FOLGER in *Weismer* v. *Village of Douglas* (64 N.Y. 91), ' If the purpose designed by the Legislature lies so near the border line that it may be doubtful on which side of it it is domiciled, the courts may not set their judgment against that of the lawmakers.' "

And as said in *Matter of Niagara Falls & Whirlpool R. Co.*

(108 N. Y. 375, 386), " The validity of an act of the Legislature is not to be assailed for light reasons. It is especially necessary that the question of what constitutes a public use should not be dealt with in a critical or illiberal spirit or made to depend upon a too close construction adverse to the public."

The same treatment was given in *Sun Publishing Assn.* v. *Mayor* (152 N. Y. 257, 264), it being said : " Generally, we think, the purpose must be necessary for the common good and *general welfare* of the people of the municipality, sanctioned by its citizens, public in character and authorized by the Legislature."

The opinion thus expressed in the case last cited explains why the courts have failed to approve the appropriation by a town or municipality of money to be paid to men who served in the army or to their heirs. (*Bush* v. *Board of Supervisors*, 159 N. Y. 212 ; *Webster* v. *Town of Harwinton*, 32 Conn. 131 ; *Mead* v. *Acton*, 139 Mass. 341 ; *Stetson* v. *Kempton*, 13 id. 272.) Such an expediture is not for the general welfare of the citizens of a municipality. So, too, it has been held that it would not serve a city purpose to appropriate money for purely patriotic reasons such as for fireworks on the fourth of July (*New London* v. *Brainard*, 22 Conn. 553 ; *Hood*, v. *Mayor*, 1 Allen [Mass.], 103), or the celebration of the anniversary of the surrender of Cornwallis (*Tash* v. *Adams*, 10 Cush. 252), or the return from the Exposition grounds to the city of Philadelphia of the liberty bell (*Bayle* v. *City of New Orleans*, 23 Fed. Rep. 843), or the entertainment of officers of a visiting fleet (*Austin* v. *Coggeshall*, 12 R. I. 329). In all these cases the public at large derived no benefit, and in some of them the expenditures contemplated the granting of a pure gratuity to individuals. Considered in the most favorable light, the appropriations would result not in actual but only incidental benefit.

In the present case, however, we think there is included in the object sought more than the expression of patriotic sentiments, the purpose and effect of the erection of the proposed monument being of permanent and actual benefit to the entire community. That monuments and statues may rightly be erected by municipalities in the public streets, avenues, places, squares and parks, has repeatedly been held. As said in *Tompkins* v. *Hodgson* (2 Hun, 146), " Statues of men and in commemoration of great public events are

now considered as the legitimate belongings of public places. * * * Cities, both ancient and modern, in the old world give abundant proof that statues, ornamental temples, obelisks, pillars and columns have long been considered legitimate objects of public approval and admiration, and they are neither to be hid in a corner nor placed where they cannot be seen." And, referring to streets, it is said in the same opinion, they "may be appropriated to other purposes than a mere place of passage; they may be used and appropriated for the promotion of the health, trade, commerce and convenience of the public, and, it may be added, for any public use which is consistent and in harmony with their use as public highways." So, also, in *Hoyt* v. *Gleason* (65 Fed. Rep. 685) it was said: "We think it fairly established * * * that a public monument may properly be erected on a public square, and that such appropriation of public ground is a public use for public purposes."

As indicated in the cases cited, the function of a municipality is to minister to the needs of its citizens; and, although it may be difficult to determine the precise scope of its duties, they are in their nature general. As said in *Sun Publishing Assn.* v. *Mayor* (8 App. Div. 280), "cities are not limited to providing for the strict necessities of their citizens. Under legislative authority they may minister to their comfort, health, pleasure or education. They are not limited to policing the city, to paving its streets, to providing it with light, water, sewers, docks and markets. They may also be required by the sovereign power to furnish their citizens with schools, hospitals, dispensaries, parks, libraries and museums."

In the same liberal spirit, we think the erection of a beautiful monument or memorial is serving a public purpose. It is not only an expression of patriotism; it contributes to the education, the pleasure and the cultivation of the artistic sense of the citizens of the municipality. That such a project affords legitimate cause for an expenditure of public money was distinctly held in *Kingman* v. *Brockton* (153 Mass. 255), wherein the erection of a memorial hall to be used and maintained as a memorial to the soldiers and sailors of the war of the Rebellion was deemed a public purpose for which money might be raised under legislative authority by taxation. Where, as here, such a purpose is to be attained by the use of a public square or park, the limitations to be placed upon it are of the

most general character. As said in the American and English Encyclopædia of Law (Vol. 17, p. 416): " Such a place, thus dedicated to the public, may be improved and ornamented for pleasure grounds and amusements, for recreation and health, or it may be used for public buildings and places for the transaction of the public business, * * * or it may be used both for purposes of pleasure and business."

We think, therefore, that the monument here proposed to be erected, approved as it is by eminent artists, in a place sanctioned by the commissioner of parks and dedicated to public use as a park, will result not only in an incidental but an actual benefit to the community, and that the expenditure for such an object is for a city purpose.

The order should, accordingly, be affirmed, with ten dollars costs and disbursements.

VAN BRUNT, P. J., RUMSEY, PATTERSON and MCLAUGHLIN, JJ., concurred.

Order affirmed, with ten dollars costs and disbursements.