ALBANY,
Oct. 1825.

Jackson
v.
Hooker.

---

JACKSON, *ex dem.* GORMAN AND OTHERS, *against* HOOKER AND HOOKER.

EJECTMENT for part of lot No. 94, in the town of Truxton, (late Fabius) in the county of Cortland, tried at the

New trial granted in ejectment for land in the military tract, on the ground of newly discovered evidence; though this was cumulative merely, and tended to impeach a witness sworn at the first trial. Ejectments for military lots are, in this respect, an exception to the general rule.

ALBANY,
Oct. 1825.

Jackson.
v.
Hooker.

Cortland circuit, the 29th and 30th of June, 1824. before WALWORTH, C. Judge.

A verdict was found for the defendant; and a motion was now made for a new trial, on grounds which are sufficiently stated in the opinion of the Court.

*D. Woods* and *J. A. Spencer*, for the plaintiff cited 14 John. Rep. 186; 12 id. 354; 8 id. 489; 3 Burr. 1771.

*S. Forman*, contra, cited 2 Caines' Rep. 155; 3 id. 182, 307; 1 id. 24; 6 John. Rep. 425; 5 id. 248; 2 Caines' Rep. 159.

*Curia*, per SUTHERLAND, J. This is an application on the part of the plaintiff, for a new trial, on the ground of surprise, and also of newly discovered evidence. The action was brought to recover possession of a part of lot No. 94, in the town of Truxton, (formerly Fabius,) in the county of Cortland. The lot was patented to Richard Gorman, a soldier in the New York line, during the revolutionary war. The lessors of the plaintiff were the children of James Gorman, who they contend, was the brother, and heir at law, of Richard. Whether he was, or was not so, was the turning point in the cause.

The evidence on the part of the defendant tended to show, that the grand parents of the lessors never had but two children; a daughter, named Molly, and James, the father of the lessors. The evidence was very contradictory, and left it extremely doubtful what the fact was.

The testimony of Sarah Gorman, taken under a commission in New Hampshire, was introduced on the part of the plaintiff. She testified, that she was the mother of the lessors, and the widow of James Gorman; that she had always understood from Hannah Gorman, the mother of her husband, that Richard Gorman was her son, and the brother of James. That she, the witness, knew Richard, her husband's brother. That he spent one day at her husband's house, after he was 21 years of age, and the witness was 76 years of age.

To repel this evidence, the defendants produced Increase M. Hooker, who testified, that in August, 1813, Sarah Gor-

man, (the witness, whose testimony has just been stated) told him, that there never had been such a man as Richard Gorman; that some time during the revolutionary war, a man came to her house, who called himself Peter Gorman, and claimed to be the brother of James Gorman, her husband; but that he was not his brother, and that he afterwards changed his name to Richard Gorman. Hooker further testified, that he went at the same time, to the house of Joseph S. Gorman, a son of Sarah Gorman, who confirmed, in every respect, the story told by his mother.

This is the testimony, by which the lessors of the plaintiff allege they were surprised. They allege that it is an entire fabrication; and produce the affidavit of Sarah Gorman, positively denying that she ever held such conversation with Hooker. They also show that Joseph S. Gorman, who, Hooker alleged, told him the same story, was, at that time, and during the whole of the years 1813 and 1814, a soldier in the army of the United States, in the late war; and was not in New Hampshire, where Hooker alleges the conversation took place. They account for not producing the affidavit of Joseph, by showing that he is somewhere in the western country; but where they do not know.

The newly discovered evidence is cumulative merely, upon the point of James being the brother of Richard; but it is important.

The lessors of the plaintiff are not chargeable with any negligence in not being prepared to repel the evidence of Hooker. They were not bound to anticipate that a story so entirely irreconcileable with the deposition of Sarah Gorman, their witness, would be imputed to her. She was beyond the jurisdiction of the Court, and was probably too old to be produced on the trial, even if she was within its jurisdiction. The testimony of Hooker may have decided the cause with the jury. It was calculated to make a deep impression on them.

I am inclined to think the ends of justice will be best answered by giving the plaintiff an opportunity of repelling or explaining this testimony. It will not be going further than this Court has repeatedly gone, in granting new trials

relative to military lots. That class of cases is considered peculiar; and as exempt from the ordinary rules in relation to granting new trials. But the motion must be granted on payment of costs. *(Jackson v. Laird, 8 John. 489, Jackson v. Crosby, 12 John. 354. Jackson v. Kinney, 14 John. 186.)*

New trial granted on payment of costs.