CONSOLIDATED ICE CO. v. MAYOR, ETC., OF CITY OF NEW YORK.

(Supreme Court, Appellate Division, First Department. July 17, 1900.)

1 DEEDS—RESERVATION—CERTAINTY—VALIDITY.

In 1808 the city of New York granted a tract of land along Harlem river to M., and reserved so much as might be necessary to make a street 40 feet wide on the outward part of it, which became vested by mesne conveyances in R.; and in 1870 the city granted an adjoining tract to R., reserving as much as formed part of any street that was or might afterwards be laid out through it, and both tracts became vested by mesne conveyances in plaintiff. In 1859 the city, under act April 14, 1852, which empowered it to lay out a permanent street along Harlem river, and to file a map thereof in the office of the mayor, endeavored to lay out a street 70 feet wide through said tracts, and gave a definite description of the street, but authorized it by resolution, instead of ordinance, and filed the map in the office of the street commissioner. *Held*, that the city retained title to the seventy foot strip, since the action of the city council in laying out the street, even if irregular, fixed its boundaries with sufficient certainty to locate it, and to show it was within the exceptions in the grants, which was all that was required to make the reservations binding.

2. DEVESTING TITLE—POWER OF LEGISLATURE.

Under Laws April 14, 1852, empowering the city of New York to lay out a street along the Harlem river from East river to North river; and Laws 1855, c. 121, and Laws 1857, c. 763, establishing the bulkhead line and pier lines adjacent to the shores of the port of New York; and Laws 1868, c. 150, authorizing the construction of slips from the bulkhead line to the shore,—where the city, in a grant of land along Harlem river, reserved such part along the bulkhead line as should be designated as a street, and in 1859 laid out a street under authority of the former act, the later acts did not devest the city of its title to the part reserved, since the legislature has no power to devest the title, even if the later acts put the land to a different use.

3. RESERVATION FOR STREET—CHANGE OF USE.

Where a city, in a conveyance of land to prior grantors of plaintiff, reserved so much as should be necessary for a street, the fact that they afterwards put the land to a different use does not operate to devest the city of its title.

4. QUIETING TITLE—AVERMENTS—TITLE BY GRANT—ADVERSE POSSESSION.

Where plaintiff in an action to quiet title averred title by grant, and the trial proceeded on that theory, he cannot, after being defeated on such claim, set up on appeal title by adverse possession.

5. SAME—EASEMENT.

Where plaintiff in an action to quiet title averred title by grant, and asked judgment that defendants and others claiming title under them subsequent to the action should be forever barred from all interest in the land, and no proof was offered except as to title, it was not error for the trial court to dismiss plaintiff's complaint without deciding whether he was entitled to any easements in the premises.

6. SAME—QUESTIONS ON APPEAL.

Where plaintiff in an action to quiet title averred title by grant, and asked judgment that the claim of defendants and all claiming under them subsequent to the action should be forever barred, and no proof was offered except as to title, on appeal from a judgment dismissing the complaint the question whether plaintiff was entitled to any easements in the land will not be considered.

Appeal from special term, New York county.

Action by the Consolidated Ice Company against the mayor, aldermen, and commonalty of the city of New York. From a judgment dismissing the complaint, plaintiff appeals. Affirmed.

Argued before VAN BRUNT, P. J., and HATCH, McLAUGHLIN, and O'BRIEN, JJ.

James A. Deering, for appellant.

Theodore Connoly, for respondent.

HATCH, J. The action was brought under sections 1638 et seq. of the Code of Civil Procedure to determine a claim made by the defendant to a parcel of land 70 feet wide along the bulkhead line of the Harlem river, between 113th and 114th streets, in the city of New York. The parcel in question was formerly land under water, in part between the original high-water line and low-water line, and in part beyond the low-water line, of the river. The city, under the Dongan charter, acquired title to the land between high and low water mark (Sage v. Mayor, etc., 154 N. Y. 61, 47 N. E. 1096, 38 L. R. A. 606), and to the lands outside and to the easterly of the low-water mark, from chapter 285 of the Laws of 1852, laying out an exterior street, which, it is conceded, embraces the premises in dispute. In 1808 the mayor, aldermen, and commonalty of the city of New York made grants of certain lands to Phillip Milledoler, which contained the following clause:

"Saving and reserving, nevertheless, to the said parties of the first part and their successors, out of the premises hereinbefore described, so much land as will be necessary to make a street of forty feet wide on the outward part of the soil hereby granted."

By various mesne conveyances the title of Milledoler in these premises became vested in Stephen Roberts and others, and through Roberts and others in the plaintiff. In 1870 the mayor, aldermen, and commonalty of the city of New York conveyed a portion of the premises described in the complaint to Stephen Roberts and others, adjoining the premises mentioned in the Milledoler grant, which conveyance contained, as a part of the description, the following clause:

"Saving and reserving out of the hereby granted premises so much thereof as may form any part of any street or streets, avenue or avenues, that may now or hereafter be assigned, designated, or laid out through said premises according to law for the uses and purposes of public streets, avenues, or highways, as hereinafter mentioned, or which are now in use as such."

The title of Roberts and others in these premises became vested in the plaintiff, and the premises in question are a part of the premises embraced in this conveyance. The Milledoler deed was recorded in the office of the comptroller, in Liber E of City Grants (page 508); and the deed to Roberts and others was recorded in the office of the register of the city and county of New York, in Liber 1161 (page 117), September 15, 1870. Prior to this conveyance, and in pursuance of chapter 285 of the Laws of 1852, a street had been laid out along the Harlem river, known as "Exterior Street," between the East river, or Sound, and the North or Hudson river, 70 feet in width, and it is the premises included in this alleged street between 113th and 114th streets that is in question. Therefore, when plaintiff's predecessors in title took the grant of 1870 from the city, embracing these premises, they took it with knowledge of the fact that a street had been attempted to be laid out, assigned, or designated

65 N.Y.S.—58

through them; and if it had been properly laid out, assigned, or designated they took no title to that portion of the premises embraced in the said street,—assuming that the clause of the deed hereinbefore quoted constituted a valid exception from the grant. The premises in question, with other lands, have been designated and laid out as and for a public park, under and pursuant to chapter 746 of the Laws of 1894. It is conceded that Exterior street was never opened or used by the public, and it appears that the plaintiff and those under whom it claims title have been in possession of the premises since the grant or conveyance of 1870. The plaintiff contends that the so-called exception in the grant of 1870 is void for uncertainty; that no street had been lawfully assigned, designated, or laid out, within the meaning of the grant; that, if it had been so laid out or designated or assigned, the city afterwards made the exception ineffectual by abandoning the use of the premises for street purposes; and that it has title, if not by grant, by adverse possession. The determination of the questions involved depends upon the construction to be given to the words of the grant of 1870, and the acts of the legislature and proceedings of the city authorities in relation to the premises. It cannot be doubted but that the reservation contained in the grant is sufficient to create an exception, if the land referred to therein is located with sufficient certainty to show that the exception operates upon it. The language is, in substance, and practically in terms, the same as was construed by the court of appeals in Langdon v. Mayor, etc., 93 N. Y. 129. Therein it was held that the words of reservation constituted an exception, and vested title to the street and water lots in the city, or, what seems a more accurate statement, the city retained the title in the land, and never devested itself of it. As was said by the presiding justice in discussing a similar question:

"But by this grant there was expressly excepted the soil embraced within the streets shown upon the maps annexed to the conveyance. * * * The land in question was not included in the grant, and therefore no title passed. * * * They actually excepted the land; did not give any title, did not intend to give any title."

And it was held, therefore, that no title in the land was obtained. Mayor, etc., of New York v. New York Cent. & H. R. R. Co., 69 Hun, 324, 23 N. Y. Supp. 562. The same question was again before the court in Mayor, etc., v. Law (Sup.) 6 N. Y. Supp. 628, where the same view was taken and affirmed by the court of appeals; that court adopting, as had the court below, the opinion of the learned referee upon this subject. 125 N. Y. 380–394, 26 N. E. 471. The nature and effect of the exception contained in this grant have been so fully discussed and so decisively determined by the cases which we have cited, that it is not necessary to further consider such question.

We are brought, therefore, to an examination of the exception contained in this grant, to see if the same be void for uncertainty in locating the land. This depends in a large measure upon the fact as to whether the street was laid out by the city authorities so as to be certainly located. As the grant was made for a valuable consideration, it is to be resolved favorably to the grantee, and this

embraces the certainty of the thing excepted, as well as any other questions arising therefrom. Langdon v. Mayor, supra. The map which accompanied the grant did not show the existence of the street, but this is by no means conclusive of the fact that no street was there. If in fact Exterior street was laid out prior to the grant, the exception operated to reserve the title therein in the city, as the language of the exception in terms works such a result; and the failure to designate the same upon the map which accompanied the grant would not defeat the city's title. It must be conceded (in fact, such is the averment of the complaint) that a street was attempted to be laid out by the city over the premises the subject of the grant. In this connection the complaint avers that the street is designated upon a map filed in the office of the street commissioner of the city on or about the 10th day of September, 1859, and was entitled:

"Map of Exterior street, in the city of New York, along the shore of the Harlem river from Eighty-Ninth street, on the East river, to the North or Hudson river, laid down in conformity with the exterior line as established by the harbor commissioners by virtue of an act of the legislature passed April 17th, 1857, and in accordance with the resolution of the common council of October 26th, 1858, prepared by Henry L. Southard, city surveyor, 1858 and 1859."

It is also an averment of the complaint, and the same is sustained by the proof given upon the trial, that the city adopted a resolution laying out the particular street, and assumed so to do. If the proceedings theretofore were sufficient to lay out the same, then we think that it must be conceded that there was at the time of the grant an existing street which could be certainly located, and that the reservation in the grant excepted the title therefrom, and that such title did not pass by it, but remained in the city. It appeared that on the 11th day of January, 1858, a petition was presented to the common council to have Exterior street laid out along the shore of the Harlem river. On the 25th of January following, the petition was referred to the committee on roads. On September 20, 1858, the committee made its report. On October 4, 1858, the report of the committee was adopted. The matter was then laid over till October 25, 1858, when the report of the committee fixing the exterior line of the Harlem river was adopted, and upon the next day the resolution was approved by the mayor of the city. On the 12th day of September, 1859, a communication was made to the aldermen by the street commissioner relative to laying out said street, and transmitting maps showing the line of Exterior street, 70 feet in width. At the same time a resolution was submitted authorizing the commissioner to cause the necessary surveys to be made, and maps prepared defining the lines of such street. This was referred to the committee on roads, and on September 26th the committee made a report, transmitting a map showing the line of such street, and the resolution pursuant to which the survey and map were made. A resolution was thereupon adopted confirming the same, and it was directed to be sent to the board of councilmen for concurrence. On the 25th of October such board registered its concurrence, and by resolution adopted the same. This resolution was approved

by the mayor on the 28th of October, 1859; and the maps were filed in the office of the street commissioner of the city, and are the maps showing this street to which reference has been made. It is insisted that these proceedings were ineffectual to establish the street, for the reason that it must have been established by ordinance, and that a resolution was ineffectual for the purpose; that there was failure to give proper notice of the proceedings; and that in any event the grantees were not chargeable with notice of the maps filed in the office of the street commissioner. It is to be observed that authority to lay out the street was derived from the act of 1852, and by its provisions no particular form of procedure was provided. The act simply provided that the mayor, aldermen, and commonalty lay out and fix a permanent Exterior street, cause a map thereof to be made, and when the same was approved by the mayor, aldermen, and commonalty, it was to be filed in the office of the mayor. Any proceeding, therefore, that indicated the lines of the street with certainty, and was evidenced by a map, would answer the terms of the act. There can be no doubt but that the action of the aldermen and councilmen definitely fixed and laid out this street in such form and certainty as clearly evidenced its location and boundaries. This received the approval of the mayor, and nothing was left uncertain in the location of the street. The map was filed in the street commissioner's office, while the act required that it be filed in the office of the mayor. This departure from the terms of the statute, however, did not defeat the laying out of the street, as the provision in this respect must be regarded as directory. Jackson v. Young, 5 Cow. 269; People v. Supervisors of Ulster Co., 34 N. Y. 268. The street was definitely located, and the acts were regular and evidenced it. If there had been an entire failure to file the map, it would not have affected the existence of the street, if it could be otherwise located. The map was evidence of what had been done. It was not the street, but evidence of it.

If, however, the charter provisions be held to apply to the laying out of this street, we do not think the result will be changed. There is no specific provision of the charter of 1857 (chapter 446, Laws 1857) to which our attention has been called which requires that the action of the authorities charged with laying out the street should be by ordinance rather than by resolution. By section 11 of the charter a legislative act may be by ordinance act or by resolution. The only provision requiring the formality of a resolution is found in section 37, which provides that all ordinances and amendments of ordinances shall be published. And the requirement is that if the action contemplate any specific improvement, or involve the sale, disposition, or appropriation of public property, or the expenditure of public moneys or income therefrom, or lay any tax or assessment, the ordinance shall be published. The only requirement which seems to have made an ordinance proper, rather than a resolution, is found in the provision that if the act "shall contemplate any specific improvement, or involve the sale, disposition or appropriation of public property," the ordinance authorizing it shall be published. There is no command found in this provision, in terms, which requires an

ordinance. The command is that, if the ordinance be passed, it shall be published; and this requirement has been held to be directory, and that failure to publish did not invalidate the proceeding. People v. Carpenter, 24 N. Y. 86.

If there had been an attempt to make these acts the basis for an assessment or the creation of a charge against the property of the taxpayers, a different question might have been presented. It might well be that such irregularity would defeat the right to impose a tax, and bring the case within the principle decided in Re Douglass, 46 N. Y. 42; Moore v. Mayor, etc., 73 N. Y. 239. In the present case, however, the city of New York is not required to incur any expense in the creation of this street, as between the grantees in the deed and the city; for, by an express covenant in such deed, the grantees assumed the duty of creating the street and keeping the same in repair. Assuming, however, that the street was not lawfully laid out, the fact remains that the city had attempted, at least, to lay out a street, and it had so far proceeded in this direction that the particular boundaries of a street 70 feet wide across the strip of land, the subject of the grant, was certainly located. It was this particular strip which the language of the exception contained in the grant fairly embraced, and the intent to exclude it from the operation of the grant is left in no measure of doubt from the language used. The intent to make exception of the land the act of the grantor in clearly locating the ground upon which the exception could operate, and the notice which the grantees had of what was clear in intention, operated, in law, to exclude from the grant such land, under well-settled rules of construction. Clapp v. Bynes, 3 App. Div. 284, 38 N. Y. Supp. 1063; Harriot v. Harriot, 25 App. Div. 245, 49 N. Y. Supp. 447; Broom, Leg. Max. p. *600. The rule which gives effect to language working an exception or reservation to the grant is not different from that which construes the grant itself. 3 Washb. Real Prop. pp. 384, 440, 445; Langdon v. Mayor, supra. The question does not turn upon the technical doctrine of notice, either of the filing of the map or otherwise, but upon the fact of the existence of a definitely located street. The grantees are not protected by the fact that they were not required to search in the commissioner's office for the map as evidence of the street. The notice contained in the deed excepted the street from the grant, and, if the street or the land over which it was to be laid out could be located at the time when the grant was made, the grantee was chargeable with notice of it, whether the map was recorded or not, or the proceedings were regular or not. It is the fact which governs, and not the notice of the fact. Unless, therefore, other matters have worked a different result, this street is excluded from the grant, and title thereto did not pass. It is insisted by the plaintiff that other matters work such result; and the claim is made that the premises in dispute are situated upon the East river, and not upon the Harlem river, and that, as the street excepted in the grant was located upon the East river, it does not fall within the terms of the exception, as there was no jurisdiction in the city to lay out a street along the East river. This contention as to location has been abundantly

disapproved by the evidence, and the court has expressly found against the defendant's contention in this respect. So far as the acts of 1855 and 1857 are concerned, they did not supersede or repeal the act of 1852, under which the defendant obtained title to the street. There is nothing in their terms which works a repeal, or which is in conflict with its provisions. These acts authorize the establishment of bulkhead and pierhead lines for the protection of the harbor, and to guard against encroachments. The act in no manner interfered with the authority of the city to lay out the street. The harmony of the system was recognized by the city when it adopted the resolution authorizing the street, for therein it is recited that the street shall be "in conformity with the exterior line laid down by the harbor commissioners." Nor can the plaintiff derive any aid from chapter 697 of the Laws of 1887. That portion of section 7 which in terms repeals the act of 1852, so far as it authorizes the street, is probably an infringement of the constitution (article 3, § 16), as it can scarcely be stretched sufficiently to fall within anything contained in the title, or to which reference is therein made. But, if it were otherwise, by its very terms the title to the land is confirmed in the city, and the plaintiff could take nothing thereby. At most, if it could be held to apply, it could only be held so to operate as to work a discontinuance of the street, but the title of the city thereto would not be affected or impaired.

It is further claimed that chapter 150, Laws 1868, has operated to destroy this street and the rights of the city therein. It may be conceded that the construction of slips from the bulkhead line over the street, where the street when physically established would run, is wholly inconsistent with its use as a street. It is quite evident that the existence of the slip would destroy the street, and the construction of the street would destroy the slip. Such condition, however, cannot so operate as to change the title to land. The act in question makes lawful the construction of the slips by the proprietors of grants of land under water on the Harlem river. No obligation, however, is imposed to make such construction, its provisions in this respect being purely permissive. It does not purport, either in terms or otherwise, to vest in the proprietors of the water grants any title to the land out of which the slips are excavated. If this land was vested in the city it would not be competent for the legislature, by the act, to devest the city of such title; and, had the act in terms attempted to work such result, it would be futile for the purpose. The legislature is possessed of no such power. But the act, by its terms, does not even attempt to change the title to lands. It simply authorizes a particular use. The grant to Boyd was made after the passage of the act; and when it was taken it was then known, or at least the grantees were chargeable with notice, that the land in which the excavation for the slips might be made was within the lines of the street, and that the city excluded the title to such land from the grant. Therefore the only right which could be obtained by virtue of the terms of the act was subject to the title of the city. It seems clear, therefore, that nothing which appears in this act is available upon which to base the claim that the city lost

title in the land, or that the grantees in the deed, or their successors in title, obtained title or right thereto superior to the city's claim. It matters not that the city proposes to use the land for other purposes. As was said by Van Brunt, P. J.:

"A grantor who states in his deed that he excepts a certain portion of the land, because he wants it for a certain purpose, cannot be held to have conveyed that which he has expressly excluded, because he afterwards devotes it to a different purpose." 69 Hun, 326, supra.

The theory of the action, as averred in the complaint and proved upon the trial, rested upon the claim of title by grant. There was not even pretense of title by adverse possession made upon the trial. The plaintiff must, therefore, rest upon the theory of its action and the proof given in support of it. It is not permissible to assert a right to relief based upon a grant, and, being defeated upon that claim, upon the trial assert another and entirely different claim upon appeal. Hecla Powder Co. v. Sigua Iron Co., 157 N. Y. 437, 52 N. E. 650; Heimburg v. Railway Co., 162 N. Y. 352, 56 N. E. 899. In addition to this, the two claims are entirely inconsistent. The claim of title by adverse possession is inconsistent with claim of title by grant. The latter is the sole theory set forth in the complaint, and, as the plaintiff has failed to establish such claim, it must fail in the action.

Other questions are raised, but they do not require discussion, as they are not fatal to the conclusion which has been reached. We are convinced that the plaintiff has failed to make a case entitling it to the relief which it asks. Nor do we think it necessary to determine upon this appeal what rights, if any, are possessed by the plaintiff in and to any rights or easements. Upon the present proof it is by no means clear what these rights are, and we can scarcely lay down rules therefor when we do not know what the facts are. Nor do we think that the trial court should have retained this action for the purpose of determining the interest or the plaintiff's rights, if any, in the premises. The theory of the complaint and all its proof proceeded upon the ground that the plaintiff had title to the land. The demand for judgment was that the defendant and all other persons claiming title under the defendant subsequent to the commencement of the action be forever barred from all claim to any estate or interest of any kind in the premises. There was not a suggestion made at the close of the proof that the court should determine any other question than that of title. In order to have determined any other right, it would have required that the case be opened, and that proof be given upon the subject, as the proof offered was not sufficient to determine such question. As the plaintiff chose to rest its case without proof upon this question, or the reservation of any right to make further proof, and compelled the court to determine the case upon the issue upon which it chose to stand, we think that it cannot be heard in complaint upon such questions. The judgment, as rendered, does not foreclose the plaintiff, in having its right in this respect settled in an appropriate action for that purpose. The defendant, had it set up its title and demanded affirmative relief, would have been entitled to judgment, upon this proof,

awarding it the possession of the land. Code Civ. Proc. §§ 1641–1644. Its plea does not seem, however, to bring it within these provisions of the Code.

The judgment dismissing the complaint seems to have been the appropriate judgment. It should, therefore, be affirmed, with costs. All concur.