WHITMAN et al. v. CITY OF NEW YORK.

(Supreme Court, Special Term, New York County.   October, 1902.)

1. MUNICIPAL CORPORATIONS—GRANT—CONSTRUCTION—RESERVATIONS.

In 1869 the city of New York granted lands under water on the east side of Manhattan Island between certain designated streets, and named a part of the land on a map attached to the deed as E. street, and excepted from the grant any street then in use, or any that "may now or hereafter be assigned, designated, or laid out through said premises according to law." *Held*, that the city retained absolute title, as against a subsequent grantee of its grantee, to the premises known as E. street, whether that street was ever laid out legally or not.

2. SAME—BUILDINGS—PERMISSION OF CITY.

A grant by a city of land under water, excepting a street within and immediately adjoining the bulkhead line along the whole water-front of the land, contained a covenant by the grantee that he would not build any wharves or streets until permission for that purpose was first had from the city and would not build any wharf or pier in front of the premises without the permission of the city first had.   *Held* to mean that the grantee would not build on the land excepted from the operation of the deed without the city's permission.

3. SAME—EASEMENT.

Where, in a grant by a city of land under water, it reserved to itself the wharfage in front of certain streets, there was an implied reservation of an easement for a reasonable distance over the granted premises, for access to the bulkhead or pier at the foot of each street.

Action by Nathaniel Whitman and others against the city of New York to determine a claim to a piece of land.   Judgment for defendant.

Carter, Hughes & Dwight (Charles E. Hughes and Arthur C. Rounds, of counsel), for plaintiffs.

George L. Rives, Corp. Counsel (Theodore Connoly and Edwin J. Freedman, of counsel), for defendant.

STECKLER, J.   This action is for the determination of a claim made by the defendant to a piece of land bounded northerly by the southerly side of East Ninety-First street; easterly by the bulkhead line established by the harbor commissioners, pursuant to chapter 763 of the Laws of 1857; southerly by the northerly side of East Ninetieth street; and westerly by a line drawn parallel with, and distant 70 feet westerly from, the said bulkhead line; and also of a claim made by said defendant to control improvement of plaintiffs' adjoining premises, and to the enjoyment of certain easements in connection with defendant's wharf property at the foot of each of said streets.   Code, §§ 1638–1650.   The parcel referred to was originally land under water, and formed the easterly portion of premises included in a description of property conveyed by the mayor, aldermen, and commonalty of the city of New York, April 7, 1869, to John L. Brown, plaintiffs' predecessor in title.   Upon the map attached to the deed the said parcel was designated as "Exterior Street," and the water to the immediate east of the parcel was designated "Harlem River."

The deed, which contains most, if not all, of the covenants ordinarily inserted by the municipality in grants of land under water, contained the following clause:

"Saving and reserving out of the hereby granted premises so much thereof as may form part of any street or streets, avenue or avenues, road or roads, bridge or bridges, that may now or hereafter be assigned, designated, or laid out through said premises according to law for the uses and purposes of public streets, avenues, and highways, as hereinafter mentioned, or which are now in use as such."

All the land between high and low water mark around the island of Manhattan was, by the Dongan charter, in 1686, granted to the city of New York; and pursuant to the act of the legislature of 1826 (chapter 58), supplementing the provisions of the Montgomerie charter and the act of 1807, the land commissioners, in 1826, granted to the city all the land covered with water along the westerly shore of the East river or sound, contiguous to and adjoining the lands of the city at low-water mark, and extending 400 feet into the river or sound, from a point on the westerly shore of said river or sound, two miles north from Corlear's Hook, and extending therefrom north along the westerly shore of the East river or sound to Spuyten Duyvil creek, otherwise called Harlem river. Chapter 285 of the Laws of 1852 authorized the city to lay out and fix a permanent exterior street "along the shore of the Harlem river, in the city of New York, between the East river or sound and the North or Hudson river," and granted to the municipality all the right and title of the people of the state to the lands covered with water along the shore of the Harlem river, from the East river or sound to the North or Hudson river, and extending from low-water mark to and including the said exterior street or permanent line. Under the statute, said Exterior street had, in 1859, prior to the grant to Brown, been laid out by the city, and, from the proceedings had by the municipal authorities, it appears that the said street was laid out from Eighty-Sixth street to the Hudson river at Spuyten Duyvil creek.

If the river northward from East Ninetieth street was the Harlem river in 1852, the city is clearly entitled to that part of the premises designated on the map annexed to the Brown deed as Exterior street; for that strip, under the authorities, was excepted from the land conveyed; so that the city retained title to the strip, and never devested itself of such title. Mayor of City of New York v. New York Cent. & H. R. R. Co., 69 Hun, 324, 23 N. Y. Supp. 562; Consolidated Ice Co. v. City of New York, 53 App. Div. 260, 65 N. Y. Supp. 912, affirmed in 166 N. Y. 92, 59 N. E. 713; Langdon v. City of New York, 93 N. Y. 149. The plaintiffs contend that the river at the point in question is and was the East river, or the sound; that the city had no authority to designate or lay out a street there; and that, therefore, the exception in the deed was ineffective.

I think the preponderance of evidence shows that the river at the premises in question is not the Harlem river, within the meaning of the act of 1852; for nearly all the ancient deeds and maps of the upland from 1787 to 1866 describe the upland between Ninetieth and Ninety-First streets as situated upon the East river or sound; and, before and subsequent to 1852, acts of the legislature speak of the river at the place in question as the East river or sound.

It remains to be considered whether, independent of the statute of 1852, the municipality, by their proceedings in 1859, assigned,

designated, or laid out a street according to law at the eastern extremity of the premises thereafter conveyed to Brown. By chapter 80 of the Laws of 1798, the state authorized the city to lay out and adopt an exterior street along the East river or sound, and along the North or Hudson river, and, as the city increased in size, to extend such streets so laid out, and that act was substantially reenacted in 1801 (chapter 129, § 3), and again in 1813 (chapter 86, § 220). But it seems to have been assumed that these acts were limited in their scope to South street and West street (Langdon v. City of New York, 93 N. Y., at page 135; Laws 1828, c. 149; Laws 1860, c. 368; Laws 1887, c. 697), and, even if my views were otherwise, I would not feel disposed to disturb that assumption.

Nevertheless, I am inclined to think that, as between the city and plaintiffs' predecessor in title, at least, the city had a right to assign or designate, according to law, a portion of its own property for the uses and purposes of a public street; and that the exception of such part of the premises, which was plainly marked on the map annexed to Brown's deed, was sufficiently definite to keep the title thereto in the city. See Consolidated Ice Co. v. City of New York, 166 N. Y., at page 99, 59 N. E. 713; Smith v. Furbish, 68 N. H. 123, 44 Atl. 704, 73 Am. St. Rep. 626. And, even if the plaintiffs' contention that at the time of the granting of the premises the exterior street was not assigned, designated, or laid out "according to law," were correct, it is possible for the proper authorities at any time hereafter to assign, designate, or lay out such exterior street as is indicated on the map annexed to Brown's deed, whereupon the exception would become operative; for the language of the deed is, "saving and reserving * * * so much thereof as may form part of any street * * * that may now or hereafter be assigned, designated, or laid out through said premises according to law," etc. The city's claim to said strip, described as "Exterior Street," must therefore be sustained.

The defendant's second claim is that it is entitled to an easement of access to its pier and right of navigation over the premises, and also to forbid the improvement of said premises until permission is first had and obtained. Brown's deed contains the following covenant:

"And it is hereby further covenanted and agreed by and between the parties to these presents, and the true intent and meaning hereof is, that the said party of the second part, his heirs and assigns, will not build the said wharves, bulkheads, avenues, or streets, hereinbefore mentioned, or any part thereof, to make the land in conformity with the covenants herein mentioned, until permission for that purpose shall be first had and obtained from the said parties of the first part or their successors, and will not build or erect, or cause to be built or erected, any wharf or pier or any other obstruction in the Harlem river in front of the hereby granted premises without the permission of the said parties of the first part, their successors or assigns, first for that purpose."

It seems to me that the covenant clearly expresses the meaning of the deed to be that the grantee would not build on the land excepted from the operation of the deed without the city's permission, and that, as the wharves and bulkheads were, if at all constructed, to be built on the part excepted, the grant of wharfage was con-

ditioned upon the grantee and his assigns first obtaining permission from the city to build Exterior street on the easterly side of the premises. As no such permission has been given by the city, the doctrine of Langdon v. City of New York, 93 N. Y. 129, is inapplicable. Plaintiffs, however, can improve their own property—that is, all of the land, with the exception of the 70-foot strip, assigned for Exterior street—as they please, subject to any proper regulations of congress or the dock department.

The deed 'to Brown excepted wharfage to accrue from the end of the bulkhead in front of Ninetieth and Ninety-First streets, which wharfage was reserved to the city. Under this covenant, I think that there was an implied reservation of an easement over plaintiffs' premises for a reasonable distance north of Ninetieth street and south of Ninety-First street for access to defendant's bulkhead or pier at the foot of each of those streets. Langdon v. City of New York, supra; Knickerbocker Ice Co. v. Forty-Second St. & G. St. Ferry R. Co., 48 N. Y. Super. Ct. 489. Submit decision and judgment in accordance with these views.

Judgment accordingly.